[Civ. No. 11909. Second Appellate District, Division One.—June 29, 1940.]

ENA I. ARGO et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Wendell W. McCanles for Appellants.

W. I. Gilbert for Respondents.

WHITE, J.—In this action by a wife and children for the death of their husband and father, the court at the completion of plaintiffs' case granted a nonsuit. From the judgment entered thereon and from the order denying a motion for a new trial this appeal is prosecuted.

For a correct understanding of the questions involved on this appeal the facts of the case may be thus briefly narrated. On the morning of September 29, 1936, at about the hour of 7:40 o'clock, the deceased, while driving his automobile in a westerly direction on Arvilla Avenue, a public highway in Los Angeles County, across the Southern Pacific Railroad tracks, was struck and killed by a southbound passenger train of defendant railroad company, the engine of which was operated by defendants Gibson and Rainey. At the point where it crosses Arvilla Avenue the railroad track runs generally north and south. Decedent was traveling from his home, located a few blocks north and west of the crossing, and was alone in the automobile which he was driving. At the crossing he was required to make a right-hand turn. The train was to his back and on his right side. Except for a line of telegraph poles there was nothing to obscure the view of either the automobile driver or defendant fireman situated on the east side of the engine cab, for a distance of approximately a mile. The train was coasting downgrade to the crossing at a rate of speed estimated as being between fifty and sixty miles per hour. It struck the automobile on the right rear wheel. At the Arvilla crossing it appears that on either side of the east rail there were chuck-holes from six to eight inches deep and one to two feet wide. It was testified that about the moment the automobile reached the crossing, just east of the first rail, it slowed down to about a mile an hour and started "bouncing around from the holes there"; that "the car was just coming over the rail and then it (the train) hit the car's back wheels . . . " At the trial it was conceded that the decedent was very familiar with the railroad crossing in question, had driven over it many times and

had on numerous occasions halted his automobile to permit the train to pass.

The familiar rules governing the power of the court in granting a nonsuit need not here be discussed. It is sufficient to say that on a motion for a nonsuit the function of the trial court is similar to and practically the same as that of a reviewing court in determining on appeal whether there is evidence in the record of sufficient substantiality to support a verdict for plaintiff.

Appellants first contend that defendant railroad company was guilty of negligence, both in the manner in which the train was operated and by reason of the allegedly dangerous and defective condition of the crossing due to the chuckholes therein. The claim of negligent operation of the train is based upon the speed at which it was running and the failure of the fireman, with an unobstructed view for a mile, to see the decedent approach and go upon the tracks until the engine was within 250 feet of the crossing. Even though we concede the claimed negligence of the defendant railroad company, we are confronted with the conduct of the deceased and the question of whether the same amounted to contributory negligence upon his part which proximately contributed to his death. The presumption that the deceased used due care for his own safety is not applicable here because, as we shall point out, all the evidence was to the contrary. (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529]; *Engstrom* v. *Auburn Automobile Sales Corp.*, 11 Cal. (2d) 64 [77 Pac. (2d) 1059].) There is direct evidence that at a point approximately 28 feet before he drove upon the track decedent slowed his automobile to a speed of between five and six miles per hour; that this speed was decreased until the automobile came upon the east track, when, as heretofore stated, "it started bouncing around" and slowed down to "almost one mile an hour". If we were to presume that deceased looked before his automobile came upon the track, we must also presume that he saw the fast approaching train, for the undisputed evidence is that he would have had a clear view for a mile, and under the uncontradicted evidence the train must have been within that distance during the time he must be presumed to have looked, if any such presumption is resorted to. Decedent had driven over this crossing many times; he

was familiar with the presence of chuck-holes therein. On his way to work on previous occasions he had stopped to let the southbound passenger train pass. Nevertheless he drove upon the tracks and was struck at the time his rear wheel was about to clear the west rail. Under this state of facts can it be said that different conclusions might reasonably be drawn as to the prudence of decedent in attempting to cross the railroad track? We think not. Therefore it must be held, reviewing the evidence in the light most favorable to appellants, that a reasonably prudent person would not have undertaken to cross this railroad track under the existing conditions, and consequently, under established rules of law, contributory negligence upon the part of decedent is established as a matter of law. (*Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 Pac. 788]; *Hoffman* v. *Southern Pac. Co.*, 101 Cal. App. 218 [281 Pac. 681], and cases therein cited.)

It has frequently been said in the decisions that the railroad track of a steam railway must itself be regarded as a sign of danger. The slow rate of speed at which decedent was traveling enabled him to avoid the accident up to the time when he was within a few feet of the railroad track. The negligence of the unfortunate man was therefore continuous up to the time he was practically upon the rails. With the picture presented by the facts of this case it would be idle to attempt to show ordinary care or prudence upon the part of the deceased. In fact, to justify the conduct of decedent, we would be required to do violence to practically every railroad crossing case in the State of California.

■ Appellants assert that even if the deceased was guilty of contributory negligence, the doctrine of last clear chance applies, and that the matter should have been submitted to the jury on that question. The necessary elements of the doctrine of last clear chance are thus set forth in *Girdner* v. *Union Oil Co.*, 216 Cal. 197, 202 [13 Pac. (2d) 915]: "That plaintiff has been negligent and as a result thereof is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape

from such situation, and has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.'' The question presented to us is whether the jury should have been permitted to determine whether defendant fireman had a last clear chance, without injury to others, to avoid injuring decedent and negligently failed to do so. The facts of the instant case in this regard present a debatable question upon the determination of which reasonable minds might disagree. It is true the fireman testified that he did not see decedent upon the tracks until the engine was within forty or fifty feet of him, at which time he saw only ''the back end of the car''. However, the fireman testified it was his duty to watch for automobiles that might come upon the track and that he was so watching, but nevertheless did not see decedent's automobile until all but the rear end thereof had passed over the east track and beyond his vision from the engine cab window on the east side. The jury might have but was not required to believe that if he was looking he did not see the automobile until the train was within forty or fifty feet of it. The jury might have found that an application of the brakes on the train when decedent was in this position of peril would have saved the latter's life, because without any application of brakes the swiftly moving train struck the *rear* of the moving automobile. The jury might reasonably have found that had the arrival of the train at the crossing been arrested by a brake application for a second or two, decedent would have cleared the tracks. A quotation from volume 2, California Jurisprudence Ten-Year Supplement, page 189, is here pertinent:

'' . . . where it appears that the victim was in the path of the vehicle and plainly visible to the driver, the trier of facts may properly conclude that the driver 'must have seen' him. Hence, the jury may be instructed as to the doctrine of last clear chance although there is no direct evidence that the defendant actually knew of the victim's presence in the roadway, and indeed, although he may have testified that he did not see the victim in time to avert the collision.''

The evidence in the record before us would support a finding by the jury that the fireman was, as he testified, looking toward the crossing for any approaching vehicular or pedes-

trian traffic; that his view being unobstructed he did see the decedent in a position of peril when he came upon the track, moving forward at about one mile per hour, and was "bouncing around". The jury might have found that when he was apprised of decedent's perilous position the fireman could have prevented the collision had he slowed down the speed of the train by directing an application of the emergency brakes, and the jury could have further found that, having such opportunity, he negligently failed to take advantage thereof until too late to avoid the collision. Such facts, if found, would justify an application of the doctrine of last clear chance. (*Center* v. *Yellow Cab Co.*, 216 Cal. 205 [13 Pac. (2d) 918]; *Girdner* v. *Union Oil Co., supra; Hellman* v. *Bradley,* 13 Cal. App. (2d) 159 [56 Pac. (2d) 607]; *Smith* v. *Los Angeles Ry. Co.,* 105 Cal. App. 657 [288 Pac. 690]; *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, 522 [74 Pac. 15, 98 Am. St. Rep. 85, 63 L. R. A. 238].) Also, the question of whether decedent was guilty of "continued negligence", and if so, whether under the evidence here present such negligence was the proximate or only the remote cause of his death, was one for the triers of fact. (*Bailey* v. *Wilson,* 16 Cal. App. (2d) 645 [61 Pac. (2d) 68].)

It should be understood that throughout this opinion we have followed the rule applicable to cases wherein the appeal is taken from the judgment following a directed verdict or nonsuit, which rule requires that evidence shall be taken by the appellate tribunal in the most favorable light to the losing party in the court below. We are therefore expressing no opinion as to the weight of the evidence or its truth or falsity.

The attempted appeal from the order denying plaintiffs' motion for a new trial is dismissed, and for the reasons herein stated the judgment from which this appeal is taken is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 22, 1940, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1940. Carter, J., did not participate.