[Civ. No. 15533. First Dist., Div. One. Sept. 10, 1953.]

VANCE GREENE, as Guardian, etc., Appellant, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Respondent.

Jarvis, Miller & Decker, Hugh B. Miller and Charles W. Decker for Appellant.

Carlson, Collins, Gordon & Bold and John Ormasa for Respondent.

BRAY, J.—From a judgment of nonsuit plaintiff, guardian ad litem of the minor children of Leroy Davis, deceased, appeals on a settled statement.

## QUESTIONS PRESENTED

1. Was there any evidence which would have supported a finding of negligence of defendant?

2. Should the court have reopened the case to permit additional testimony as to the train's stopping distance?

## FACTS

At Pittsburg, California, defendant's right of way runs in an east-west direction. There are siding tracks on either side of the right of way and between them a track for eastbound and one for westbound trains. Eastbound trains approach Pittsburg along a straight-of-way more than one and a half miles long. About 500 feet before reaching the station the right of way is traversed by a well defined and much used pedestrian pathway which crosses the tracks from a city street paralleling and north of the right of way, proceeds westerly along the south boundary of the right of way for a short distance, then proceeds south across a field to a community of houses and barracks where decedent, father of the minor chil-

dren, resided. This pathway has been in existence for more than 20 years, and was habitually used by decedent and the other residents of his community in proceeding to and from Pittsburg. For purposes of nonsuit, at least, defendant concedes that it was under the duty of exercising ordinary care towards decedent using this pathway, including the duty to keep a reasonably careful lookout for him as a member of the public.

Decedent left the home of friends in Pittsburg about 6:30 p. m. which was the last time he was seen alive. He had not been drinking. There were no witnesses to the accident. About 7 o'clock defendant's train, called a "caboose hop" consisting of an engine and caboose, crossed the pathway on the eastbound track. The engineer was one Griffith. It was dark at this time. A reasonable inference is that some portion of this train struck decedent. At about 7:30 the crew of another of defendant's trains, which was also eastbound, saw decedent's body lying 2 to 3 feet south of the south rail of the eastbound track at a point on the right of way about 20 feet east of the pathway. At the pathway decedent's severed right foot was found in the area formed by and 2 feet from the juncture of the south rail of the siding track with the south rail of the eastbound track. Decedent's cap was lying on the ground a few feet south of the south rail of the eastbound track about 10 feet east of the body. Between the foot and the body, strung out in an easterly direction and a few feet south of the south rail, was debris from decedent's pockets.

Engineer Griffith testified that he had been making this run daily for approximately 10 years and was thoroughly familiar with the entire track. This evening his headlight was burning brightly, casting a beam a quarter of a mile ahead and covering an area on both sides of the track equal to what would be covered by parallel tracks. The light would show anyone within its orbit 250 yards ahead of the train, and going 25 miles per hour the train could be stopped in less than a quarter of a mile. There was no obstruction to his view. He did not remember this particular trip but he always looked straight ahead down the track, and always blew the whistle and rang the bell. He knew of no speed limit through Pittsburg but was required to reduce to 24 miles per hour at the Railroad Avenue crossing which is approximately 500 feet east of the pathway. (A Pittsburg ordinance limits the speed at Railroad Avenue to 25 miles per hour.) He did not remember particularly that night but he always crossed Railroad Avenue at that speed.

He saw no one on or near the tracks and did not know the train had struck anyone until approximately a month and a half later. Just west of the pathway and on the north side of the eastbound track there is a house switch, the light on which he could see after dark from a mile and a half to the west.

*1. Defendant's Alleged Negligence.*

██ We are required to examine the evidence in the light of the well known rule that if there is any evidence, including the reasonable inferences therefrom, which would support a finding of defendant's negligence, the nonsuit must be reversed. ██ Moreover, we start with the premise that defendant was under a duty to anticipate decedent's presence on the right of way, to exercise ordinary care to discover him and upon discovery to exercise ordinary care to avoid injuring him. ██ (There being no eyewitness, plaintiff is entitled to the presumption that decedent used due care, and hence decedent could not be deemed contributorily negligent as a matter of law. (*Lehmann* v. *Mitchell*, 109 Cal.App.2d 719 [241 P.2d 573].) Plaintiff concedes, however, that this presumption cannot be used in proving negligence of defendant. (See interesting discussion of this subject in Hastings L. Journal, vol. IV, p. 124.)

██ Plaintiff contends that because the evidence shows that the engineer could see the light on the switch from a distance of a mile and a half, that the headlight illumined an area ahead for a distance of a quarter of a mile and an area to the right and left commensurable with that covered by an adjacent track, that the engineer could see a person within that area for a distance of 250 yards from the engine, and that a half hour later the crew of the streamliner passing over the same track saw the body of decedent, clad in light colored khaki clothes, lying beside the track, the jury had sufficient evidence from which it could have disregarded Griffith's testimony and concluded (1) that Griffith looked, but did so in a negligent manner and thus failed to see decedent who was in plain sight, or (2) that Griffith either did not look at all as he approached the pathway, or looking, saw decedent but failed to exercise due care to avoid injury to him. In support of this theory plaintiff cites cases, such as *Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 P. 788], to the effect that it is the duty of a pedestrian or motorist crossing a railroad track to look, and cases such as *Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 P. 259], to the effect that it is presumed that such persons see

what is in range of their vision, even though as in cases like *Loftus* v. *Pacific Elec. Ry. Co.*, 166 Cal. 464 [137 P. 34], such persons testified that they did look but did not see the approaching danger. Plaintiff then asks that these rules be applied to the engineer of a train. There is no question that these rules would apply to a train engineer in a proper case. The difficulty in applying them here is that there is no evidence of when or how decedent got on the right of way in the area covered by the train's headlight. Nor is there any evidence as to what portion of the caboose hop struck decedent. While it is reasonable to assume that decedent was struck by some part of the train, the jury would have to guess what part struck him and also when and how he got into a position to be struck.

Proof that the engineer had a clear and unobstructed view in front of his engine by the aid of a headlight, coupled with the fact that later a body is seen lying alongside the track by the crew of a train passing over the same track, is no evidence that decedent when hit was plainly and clearly visible. What the plaintiff seeks in this case actually is an application of the doctrine of res ipsa loquitur. Thus, the fact that a person is found dead beside a railroad track at or near a place where the railroad owes the duty of exercising ordinary care to keep a lookout for members of the public, under circumstances which would warrant an inference that he had been struck by some part of the railroad's train, would throw the burden on the defendant of proving that its train did not strike him, or that if it did it was not negligent in doing so. That such doctrine is not applicable in this state to streetcar-pedestrian cases has been determined in *Tower* v. *Humboldt Transit Co.*, 176 Cal. 602 [169 P. 227], and *Ross* v. *San Francisco-Oakland Term. Rys. Co.*, 47 Cal.App. 753 [191 P. 703]. The same reasoning applies to railroad trains.

*Darby* v. *Henwood*, 346 Mo. 1204 [145 S.W.2d 376], was a case involving the finding of a fatally injured pedestrian near railroad tracks when the trains of two different railroad lines had passed shortly before. Practically the same contentions made in our case were made in that case. In upholding an order granting a nonsuit the court stated (p. 379 [145 S.W.2d]) : ''As stated, the circumstances support the inference that deceased was struck by one of the freight trains that passed through Delta a short time before he was found lying by the track and fatally wounded, and, absent evidence to the contrary, the presumption is that at the time of injury deceased was exercising ordinary care for his own safety, [citations]

and also the presumption is that deceased did not commit suicide.'' The court then quoted the rule as to when nonsuits properly may be granted, which is the same as in this state, and then said (p. 380 [145 S.W.2d]) : ''We will assume, without deciding, that the evidence, as to user was sufficient to make it the duty of defendants to exercise ordinary care to discover those who might be on or near the track at the place where deceased was found, *but the presumption of due care and against suicide, and the duty to keep a lookout do not of themselves make a case.* The burden was on plaintiff to adduce evidence that one or both railroads were guilty of negligence in respect to one or more of the acts of negligence charged. . . . The presumption that deceased was in the exercise of due care does not carry with it the presumption that the defendants, or either of them, were negligent, and no presumption of negligence, as to either railroad, arises from the fact that deceased was struck and killed by one of the trains.'' (Emphasis added.)

In *Kelley* v. *Burlington-Rock Island R. Co.,* (Tex.Civ.App.) 100 S.W.2d 164, plaintiff's son was found dead within 3 feet of defendant's railroad tracks, undoubtedly killed by one of its trains. There were no eyewitnesses. In upholding a peremptory verdict for defendant granted by the trial court, the reviewing court quoted from *Texas & P. Ry. Co.* v. *Shoemaker,* 98 Tex. 451 [84 S.W. 1049, at pages 1051, 1052], language which is appropriate here: '' 'The facts of the case are, however, at least as suggestive of negligence on their part contributing to their deaths as they are of such negligence on the part of the servants. The trouble about the evidence is that it merely reveals an unfortunate and deplorable occurrence, without enabling us to see what each of the parties contributed towards bringing it about, and leaves the case very much in the same attitude as those cited.' '' Concerning the assumption which plaintiff there and plaintiff here asked be made that the particular engineer did not keep a proper lookout, the court said (p. 166 [100 S.W.2d]) : ''Suppose there was an utter failure to keep a proper lookout. What was the causal connection between such negligence and the death of this youth? We look in vain for an answer to this question. Unless deceased occupied such a position as to be seen, a proper lookout would not have prevented the accident. There is nothing in the physical facts at the scene of the accident which answers this important and controlling question. Manifestly, we cannot presume the existence of facts.''

In *Cummings* v. *Atlantic Coast Line R. Co.*, 217 N.C. 127 [6 S.E.2d 837], plaintiff's intestate was found under circumstances similar to those in our case, except that there the evidence showed that he had been intoxicated. In upholding a judgment of nonsuit the court pointed out (p. 839 [6 S.E.2d]): "No presumption of negligence on the part of the railroad arises from the mere fact that the mangled body of plaintiff's intestate was found on or near the track. . . . The doctrine of last clear chance does not arise until it appears that the injured party has been guilty of contributory negligence. [Citation.] When the doctrine is relied upon the burden is on the plaintiff to show by proper evidence: (1) That at the time the injured party was struck by a train of defendant he was down, or in an apparently helpless condition on the track; (2) That the engineer saw, or, by the exercise of ordinary care in keeping a proper lookout could have seen the injured party in such condition in time to have stopped the train before striking him; and (3) that the engineer failed to exercise such care, as the proximate result of which the injury occurred. . . . There must be legal evidence of every material fact necessary to support the verdict, and such verdict 'must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities.' " The court then said (p. 839 [6 S.E.2d]): "Tested by these principles the evidence offered leaves the instant case in the realm of speculation. While there is no evidence that a train passed the scene of the accident during the night in question, it may be inferred from the evidence as to the physical condition of the body and accompanying signs at the scene that the intestate was struck and killed by a train. Yet these physical facts present no reasonable theory to the exclusion of many others as to the circumstances under which the accident occurred. In what position was intestate when struck? The evidence is consonant with any of many theories which may be advanced with equal force, but all of which are speculative and rest in mere conjecture."

Plaintiff attempts to distinguish these cases from ours mainly by claiming that in them there was no evidence to support an inference that the train crew looked but failed to see that which was clearly visible, which he claims was the situation here. Assuming there was no such evidence in those cases, the distinction does not apply for the reason that in order to apply such distinction it must be guessed that decedent here was clearly visible in a position of danger

at a time when the train could have been stopped. There is no evidence from which such an assumption can be made, for there is no evidence of where he was at any given moment nor of what part of the train hit him.

In *Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363 [64 P. 480], a man and a boy were found dead on a track in defendant's yards. There were no witnesses to the accident. Plaintiffs, suing for the death of the boy, contended that they were killed by a backing engine and tender which passed over the particular spot earlier. It was proved that the tender had no light upon its rear. In reversing a judgment in favor of plaintiffs on the ground that the evidence was too weak to support it the court assumed that it was the engine and tender which had killed the persons and that defendant was negligent in operating them without a rear light. It then stated that there was no evidence to show any causal connection between the absence of a light and the death of the boy. ''It is a basic element in every right of recovery that a defendant's negligence must contribute to the injury,—must be the proximate cause of the injury. By proving defendant's negligence, without in some way fastening that negligence to the injury, a case is not made out. This is true, even though it be assumed that the law of this state is to the effect that, in the absence of evidence upon the subject, it will not be presumed that deceased was guilty of negligence. . . . While, as before suggested, it may not be presumed against deceased that he became drunken and slept upon the track, or deliberately stood upon the track in front of the backing engine, the laws of self-preservation denying any inference of such conduct upon his part, still, as is said in some of the cases, the deceased may have fallen insensibly upon the track in a fit, and thus have been killed, without fault upon his part, and, under such circumstances, that the absence of the light in no way tended to his death. Tested by this illustration, a dozen lights upon the tender would not have saved his life. Neither do we consider the fact that another man was killed at the same time sufficient evidence to create a presumption that the want of the light upon the tender was the proximate cause of death. . . . It would be a guess, pure and simple, upon the part of the jury to so find as a fact, and a verdict and judgment cannot rest upon a foundation created upon a guess. It is as necessary for the plaintiffs to show that defendant's negligence caused the injury, as it is for them to show that defendant was

guilty of negligence, or that the party was injured." (Pp. 364-365.)

*Washington Terminal Co.* v. *Callahan,* 276 F. 334 [51 App. D.C. 84], relied upon by plaintiffs, is not in point. There the decedent and his helper were working on a switch and were run over and killed by an engine moving a train of empty cars. It was the duty of the helper to keep a lookout for approaching trains while Callahan's duty was to work on the switch. "From the facts disclosed, the helper was undoubtedly confused by the noise of the passing train on the parallel track . . ." (P. 335.) The engineer and fireman had a clear view of the switch for a distance of 240 feet. While no one actually saw the train strike the men, both were seen working on the switch, on which decedent was found dead under the train, immediately before the train passed. His tools, too, were on the switch. Thus, differing from our case, the evidence showed decedent's position for some time prior to the accident to be such that he must have been seen had either the fireman or engineer looked. *Argo* v. *Southern Pac. Co.,* 39 Cal.App.2d 706 [104 P.2d 77], cited by plaintiffs, which considered the application of the last clear chance doctrine to the facts of that case, where eyewitnesses testified to the relative positions of the train and the auto which it struck as they approached each other, obviously is not applicable here.

*2. Stopping Distance.*

■ After the motion for nonsuit was granted, plaintiff moved to reopen the case to introduce evidence that a caboose hop traveling 25 miles per hour could be stopped within 150 feet or less. The settled statement says: "Neither the defense nor the Court had indicated that the failures of proof under consideration were concerned with any inability on the part of the engineer to avoid the accident by stopping the train in time." The motion to reopen was denied. It is not clear whether plaintiff is claiming that this denial was error. There was no error. The reopening of a case is in the discretion of the trial court. Moreover, as there was no evidence placing decedent in a position to be seen at that distance, this evidence would be immaterial. Again, it is conceded that the stopping distance of the train was not a factor in the granting of the nonsuit.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.