[Civ. No. 21094.   Second Dist., Div. Two.   May 28, 1956.]

HARRY SPENCER, Appellant, v. BEATTY SAFWAY SCAFFOLD COMPANY (a Corporation) et al., Respondents.

Samuel P. Young for Appellant.

Reed & Kirtland, Henry E. Kappler, Murchison & Cumming and R. Bruce Murchison for Respondents.

MOORE, P. J.—Only two questions are posed by this appeal: (1) Was the evidence against the corporate defendant sufficient to justify an inference that it was guilty of actionable negligence or did it warrant a judgment for such defendant *verdicto non obstante?* (2) Was the evidence against the other defendants so devoid of substance as to warrant the granting of their motions for a nonsuit?

Appellant sued for damages allegedly resulting from bodily injuries suffered by him while standing on a bleacher which had been designed by respondents Mackintosh and Mackintosh, engineers, employed by respondent Beatty Safway Scaffold Company, a corporation, herein referred to as "Beatty." The general contractor for constructing a gymnasium building at the Belvedere Junior High School was Arthur Pinner, Jr., whose contract included the installation of the automatically operated bleachers. The installation of the bleachers began January 28, 1952. The work had been completed on April 30 when the engineers for the board of education were present and witnessed the equipment in place, and in operation. No corrections were suggested with reference to the operation or to the bleacher covers.

At the close of plaintiff's case, motions for nonsuits by all defendants were granted except that of Beatty. A verdict

against it for $57,000 was set aside and a judgment notwithstanding the verdict was entered in favor of Beatty and against Spencer. Appeals were taken by plaintiff from that judgment, and also from the judgments of nonsuit granted the other defendants.

Appellant was 57 years of age. For many years prior to his accident, he had been the head physical education instructor at the Belvedere Junior High School in the city of Los Angeles. On December 16, 1952, he was in charge of the gymnasium, the bleachers and other installations. As such instructor and director, it was his duty to operate the folding bleacher devices and the retractable basketball backstops in the gymnasium. The backstops were raised and lowered by cranks inserted in winch boxes attached to the walls above the bleachers. While he was about to crank, or was in the act of cranking a backstop into place, a bleacher lid (cover) fell and struck him on the chest.

The installation of the bleachers had been completed April 30, 1952, but they were not used regularly until September. They were installed by the corporate defendant Beatty, a subcontractor under defendant Pinner. The bleachers were in six consecutive sections on the west wall of the gymnasium, about 1 inch apart and 1 inch from the wall, numbered 1 to 6 from north to south. Each section is operated separately and was so constructed as to be extended outward from the wall when the planks automatically came into place, thereby affording seating facilities for spectators. It is supported by standards on wheels. It is to be folded, or retracted, when not in use. It is extended or opened by manually pushing the wheel-supported frame forward from the wall. Then the front cover lies flat on the gymnasium floor, while the bleacher seats rest upon the extended frame; at the same time, the "lid" or top-cover is raised to a vertical position, parallel with the wall. When it is retracted, the front cover is placed so as to conceal the bleacher frame and seats from view, while the lid normally descends from its vertical position near the wall behind the retracted bleacher to become the top of a box, shutting the bleacher wholly from view. The cover or lid is made of half-inch plywood. The top or lid of the box created by closing or retracting the bleacher is of sufficient strength to prevent balls or other equipment from getting into the folded bleachers, but it is not strong enough to support heavy objects or the weight of a man. When the

lid is up, it stands in delicate balance, with its upper edge about 4 inches from the wall.

## THE AUTOMATIC OPERATION

This automaton is operated by the force of gravity, slightly aided by the attendant. A section has three sets of pulleys operating antagonistically. One end of the cable is securely attached to the lid; it proceeds through a pulley attached to the wall above the lid; thence it proceeds down the wall to a point below the lid through an opposing pulley; thence to a screw in the bleacher frame. When the bleacher is retracted, the cable slackens, whereupon the near-vertical lid falls into its place, covering the enclosed bleacher. That takes the slack from the cable which becomes taut again.

When the engineers for the board of education on April 30, 1952, observed the bleachers in operation, they found no fault in their construction or operation. For views of a section extended[1] and a section retracted,[2] see the reproductions of photographs in evidence.

## A NEW FACTOR ENTERS

The bleachers having been accepted, a new device was found essential to the gymnasium. Basketball backstops were installed. They also were put on the west side of the gymnasium. They were attached to the wall and the ceiling to be raised and lowered as required. The mechanism for operating the backstop is controlled by winch devices fastened to the wall above the bleachers and in such positions that they are above the top of the lid when it is in vertical position. The installation of the backstops and winches appears to have been an afterthought of the school board for there is no evidence that Beatty had an inkling of the plan subsequently to install the additional equipment.

## HOW IT HAPPENED

Appellant had, prior to December 16, 1952, observed the successful operation of the bleachers. They were throughout the autumn operated successfully. On the last mentioned date he went to the top of section 6 in order to crank a winch box located above the vertical lid over section 5. While doing so, the lid of that section suddenly fell, struck appellant, knocked him off the bleachers to the floor and caused him to

---

[1]Defendants' Exhibit A on page 879, top.

[2]Defendants' Exhibit K on page 879, bottom.

EXHIBIT A

EXHIBIT K

suffer brain concussion, retrograde amnesia, permanent paralysis downward from the eighth dorsal vertebra.

## Was Bleacher Negligently Constructed?

The expert proof shows definitely that the basic design of the bleacher was proper and appellant's counsel admitted that no part of it was improperly constructed. It appears, however, that the execution of the details was so far substandard that the operation of the pulley on bleacher 5 froze and became ineffective at the time of appellant's fall. The pulley that was fastened to the wall behind the seats, halfway to the floor, was too small for the cable. After the accident it was found to be immobilized. Also, the cable at that point was pinched. While there was no evidence that the cable broke, the immobility caused by the failure of the cable readily to pass through the pulley was sufficient to cause the lid to remain up when it should have come down. Other criticisms of the experts were such things as tended to create friction, thereby causing a diminution in the ease with which the cable proceeded to respond to the forces operating upon it. The immobility of the cable left the lid in its vertical position. But conceding the freezing of the cable to have been due to the negligence of Beatty, mere proof of negligence on the part of a defendant does not complete the circuit of proof of his liability. ■ To make him legally liable, the negligence of the defendant must be fastened to the injury. If it is not, a judgment against him is not justified. (*Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363, 364 [64 P. 480]. See also *Greene* v. *Atchison, T. & S. F. Ry. Co.*, 120 Cal.App.2d 135, 140 [260 P.2d 834, 40 A.L.R.2d 873] ; *Neuber* v. *Royal Realty Co.*, 86 Cal.App.2d 596, 630 [195 P.2d 501] ; *Reese* v. *Smith*, 9 Cal.2d 324, 328 [70 P.2d 933].) Where the negligence proved is not connected with the injury, "the case stands exactly as if no negligence had been proven." (*Ibid., Puckhaber* v. *Southern Pac. Co.*, p. 365.)

## The Lid or Cover

Made of plywood, the cover was 16 feet long, four feet wide, and weighed 120 pounds. It suddenly fell, struck appellant and precipitated him to the floor. But there is no evidence of what happened just prior to the lid's falling. ■ Since he suffered amnesia, he is presumed to have been acting with due care for his safety. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 562 [299 P. 529] ; *Ellison* v. *Lang Transp. Co.*, 12 Cal.2d 355, 359 [84 P.2d 510].) That presumption followed

him throughout the trial and it was never overcome by positive evidence. Hence, by that presumption of due care, appellant is relieved of the charge of contributory negligence. That presumption is aided by the evidence in this case. Not one of the four small boys who either saw him ascend bleacher Number 6 or saw him falling, threw any light on the cause of his fall. If his usual practice of standing with one foot on the extended bleacher, as on section 6 in the instant action, and the other on top of the retracted section, as on 5 herein, was negligence, the presumption here is that he did not do so. If he did anything negligently, it was not observed by those boys. Rios saw that his feet were not wide apart, although one foot was ahead of the other. Salazar saw that appellant's body was wholly on bleacher 6. Moreno saw him standing on the right side of open bleacher 6. They all saw what appellant did before he fell, to wit, reach forward with the crank for the winch box. But what thereafter occurred was unknown until two of them saw him falling with the cover on his chest. Some of them saw him insert the crank into the winch box as though to wind the backstop; some saw him falling with the 120-pound lid against his chest. But not a word was uttered proving that he was negligent. However, it now appears to be certain that although he was not negligent, yet what he himself did to the cover brought an end to his greater usefulness in his profession.

When the plyboard cover stands almost vertical, it is held so by the cable while the bleacher is extended which in turn is held taut by the screws in the wall. Unless those screws came out, the cover could not fall. It is possible that appellant lost his balance as he leaned from the top seat on section 6 to crank the winch above section 5, and in falling grabbed the cover and went down with it. If he did that, or anything else to cause him to fall, although not negligence, such possibility or some act of his caused him to fall and in his falling to pull the cover down and that fall and his pulling the cover with him or some other act of his was the sole proximate cause of the tragedy, unless the doctrine of res ipsa loquitur is applicable.

Certainly, the accident can be traced to no negligence of the defendants or any of them. Before negligence can be actionable, it must be the proximate cause of the injury. (19 Cal.Jur. 557.) ▮ Before negligence is actionable, a causal connection must be shown to have proceeded in unbroken course from the so-called negligent act to the injury.

(*Lawrence* v. *Southern Pac. Co.*, 189 Cal. 434, 442 [208 P. 966, 969]; 19 Cal.Jur. 557, note 18.) ■ The burden rests on the plaintiff to prove that the alleged negligence was the proximate cause. (*Ibid.*) The plaintiff in a tort action must establish the presence of every fact essential to his cause, especially that the negligence complained of was the proximate cause of the injury and not a mere speculation. (*McKellar* v. *Pendergast*, 68 Cal.App.2d 485, 489 [156 P.2d 950].) ■ That defendant's negligence could *possibly* have been the cause, is not sufficient. The proof must be sufficient to raise a reasonable inference that the negligence complained of was the proximate cause of the injury. If that is not the result of the evidence, if the fact finder is left in doubt and uncertainty, he cannot base a verdict or finding on guess or conjecture. (*Reese* v. *Smith*, 9 Cal.2d 324, 328 [70 P.2d 933]; *Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363, 366 [64 P. 480].)

■ As proof that negligence of respondents did not cause appellant to fall, it is recalled that he had for eight months been familiar with the method of operating the bleacher, and had been the chief actor in its operation. He had never discovered anything out of order. On the contrary, he had abused the plyboard by standing on the lid which was not designed to support a man's weight. Such practices may have caused a warping of the plyboard and thus have added to the friction of the cable and caused it to be immobilized.

Res ipsa loquitur does not apply. It does not appear that the injury was not caused by a voluntary act of appellant. (*Ybarra* v. *Spangard*, 25 Cal.2d 486, 491 [154 P.2d 687, 162 A.L.R. 1258].) From the events recited above, and from the allegation[3] that appellant went upon the bleachers to pull the cover down, it would not be irrational to conclude that his voluntary act was the cause. At the most, it cannot be said that the probabilities weigh in favor of Beatty's negligence as the proximate cause of appellant's falling beneath the bleacher's cover. In such event, res ipsa loquitur does not apply. (*La Porte* v. *Houston*, 33 Cal.2d 167, 169 [199 P.2d 665]; *Zentz* v. *Coca-Cola Bottling Co.*, 39 Cal.2d 436, 442 [247 P.2d 344].) Moreover, in view of the law that the doctrine of res ipsa loquitur is not applicable (1) unless the negligent act was caused by an agency or instrumentality

---

[3] The original complaint alleged he went upon the bleachers to pull down the lid.

within the control of the defendant and (2) must not have resulted from a voluntary action of the plaintiff (*Ybarra* v. *Spangard, supra,* p. 489), it is here recalled that Beatty's last control over the bleachers and winches was April 30, 1952; that thereafter they were for eight months under the exclusive control of the board of education and its agencies. Also, during that period, appellant was, himself, the very agent who operated and cared for the gymnasium equipment. He had operated the bleachers and backstops numerous times and they worked properly. The bleacher was equipped with a turnbuckle for taking up any slack in the cable. Whether plaintiff ever operated it does not appear. He was not asked and did not say what, if any, other adjustments he made at any time on the bleachers or backstops. The other physical education teachers and the coach of the East Los Angeles Junior College basketball team were authorized to use the crank and crank box. What they did in the way of operation or adjustment does not appear. Plaintiff explained the operation of the backstop to the "gym" coach and the inference is that he also was privileged to operate it. Mr. Bohme, an instructor, operated the bleachers and backstops four or five times. Once a lid stuck and he pulled it down with his hand. He testified that he had done nothing in the way of maintenance, or of changing any wires or oiling the pulleys or anything of that sort. He is the only witness who was asked about any change of any kind in the bleachers after delivery by defendant Beatty. This record falls far short of evidence "permitting a reasonable inference that it [the bleacher] was not accessible to extraneous harmful forces and that it was carefully handled by plaintiff or any third person who may have moved or touched it" (to borrow the phrasing of *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 458 [150 P.2d 436]).

The order granting Beatty's motion for judgment notwithstanding the verdict was properly granted.

### ORDERS OF NONSUIT WERE PROPER

In view of the foregoing discussion, it appears that the order for nonsuit on the motions of Charles Mackintosh and Mackintosh and Mackintosh were wholly justified. No negligent act on the part of either was proved. These engineers designed a safe and efficient automatically controlled bleacher. Its failure to operate efficiently could not have been due to the

negligence of either and if it failed to perform at a critical moment, such failure was not the cause of the injury.

Judgment and orders affirmed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied June 27, 1956, and appellant's petition for a hearing by the Supreme Court was denied July 24, 1956.