[No. A030305. First Dist., Div. One. Oct. 24, 1986.]

THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF
TRANSPORTATION, Plaintiff and Appellant, v.
GUY F. ATKINSON COMPANY, Defendant and Respondent.

26

**COUNSEL**

Richard F. Carlson, Orrin F. Finch, Nicholas G. Tinling and John R. Bell for Plaintiff and Appellant.

John B. Clark, James E. Harrington and Pettit & Martin for Defendant and Respondent.

**OPINION**

**RACANELLI, P. J.**—This appeal focuses upon the appropriateness of the arbitrator's award following a highway construction contract dispute.

### FACTS

The salient facts reflected in the record follow.

In 1974, the State of California Department of Transportation (State) contracted with Guy F. Atkinson Company (Atkinson), a major highway contractor, to construct a 1.6-mile section of Highway 101 near Arcata. Problems arose early in the project due to extremely wet soil conditions prohibiting construction as specified under the bid plans. Numerous changes

were ordered by state engineers over the course of the project.[1] At the beginning of the project in 1974, Atkinson approved and signed the State's change orders, which generally provided for extra work at a specified price. Shortly thereafter, Atkinson protested and refused to indorse change orders for the specific itemized compensation principally because its entire project schedule was disrupted and delayed, and it demanded reimbursement for all of its extra costs, both direct and indirect.

After completion of the highway project several months behind schedule in October 1976, Atkinson submitted a claim to the State for additional compensation of $1,518,814. The State eventually denied the claim after several years of review.

The dispute was then submitted to arbitration under the provisions of Executive Order No. B 50-78 which bound all parties to contracts with the Department of Transportation. Following an extended, fully documented arbitration hearing, the arbitrator found the State liable for additional compensation by reason of the change orders which altered the character of the original contract and the breach of an implied warranty that the excavation materials were suitable for embankment construction. The arbitrator awarded Atkinson 65 percent of its claimed damages or $1,130,618, a computation determined on the reasoning reported in the margin.[2]

The State then petitioned to vacate the award under Code of Civil Procedure section 1285; Atkinson responded by petitioning to confirm the award (Code Civ. Proc., § 1285.2). After a number of procedural delays, the action was finally heard at a specially set hearing, and the trial court entered

---

[1]Project specifications as supplied by the State provided for an equal amount of soil material to be excavated and to be used in building embankments, thus indicating the use of the excavated material in the embankments. This *balance* had an important effect on the bid prices because it allowed work to be done in an orderly, efficient fashion. When certain embankments, admittedly built to State specifications, proved unstable, Atkinson was ordered to import other material and to remove, re-do and repair completed work items.

[2]The arbitrator reached its pragmatic determination in the following manner: "Not all of the items of work were changed, and of those that were changed, the changes were not caused entirely as a result of the STATE's actions for which it should be held responsible.

"The evidence was conflicting as to the dates for planned performance. [¶] From the evidence presented, it is found that there was a change in character of the work to which ATKINSON is entitled to additional compensation to the extent of 65 percent of its claimed damages, which was proximately caused by breach of contract by the STATE.

"There were cumulative effects of all of the ordered changes. It is not feasible or possible to separately identify or measure those costs which were incurred by ATKINSON as a result of the actions of the STATE. [¶] By awarding ATKINSON 65 percent of its claimed damages, ATKINSON will be fairly and reasonably compensated by virtue of the evidence presented.

"Accordingly, ATKINSON is entitled to recover 65 percent of $1,739,413.00, or the principal sum of $1,130,618.00."

judgment confirming the award in favor of Atkinson. This appeal by the State ensued.

## BACKGROUND

██ Preliminarily, we note that both parties assert the standard of review on appeal is the same as that which governed the trial court as prescribed by Executive Order No. B 50-78; namely, that an award is beyond the power of the arbitrator if the findings of fact are not supported by substantial evidence or the award is based on an error of law.[3] ██ This standard differs from normal standards of review for arbitration awards: "The merits of the controversy are for the arbitrator, not for the courts; it is not appropriate for a court to review the sufficiency of the evidence before the arbitrator or to pass upon the validity of the arbitrator's reasoning. (*Rodrigues* v. *Keller* (1980) 113 Cal.App.3d 838, 843 [170 Cal.Rptr. 349].)" (*Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1091 [213 Cal.Rptr. 62].) Additionally, "only a limited form of judicial review of arbitration awards is provided by statute. (§§ 1285-1288; *Lehto* v. *Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 939 [138 Cal.Rptr. 419].) Every presumption favors the award, and therefore the merits of the award, either on questions of law or fact, are generally not subject to review. (*Lehto* v. *Underground Constr. Co., supra,* at p. 939; citing Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961) pp. G25-27, G53-54; *Rodrigues* v. *Keller* (1980) 113 Cal.App.3d 838 [170 Cal.Rptr. 349].)

"In ruling on a petition to correct and confirm an arbitration award . . ., the superior court must not consider the merits of the award (see, e.g., *Lindholm* v. *Galvin* (1979) 95 Cal.App.3d 443, 450 [157 Cal.Rptr. 167]), and the award may not be corrected unless a ministerial error occurred or the superior court determines pursuant to 1286.6, subd. (b) that '[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision . . . .'" (*Woodard* v. *Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656, 661 [217 Cal.Rptr. 514].)

██ However, since the record clearly reflects substantial evidence in support of the arbitrator's decision, we need not consider the assumed conflict

---

[3]The Executive Order provides in pertinent part: "The arbitrator shall decide the dispute in accordance with the applicable substantive law of California. An award, including an award of costs and fees pursuant to subparagraph (f), is beyond the power of the arbitrator if the findings of fact are not supported by substantial evidence or the award is based on an error of law."

between the Executive Order and the conventional standard of review of arbitration awards.[4]

The contract itself provided a basis for determining an adjustment in compensation if an ordered change in the plans or specifications materially changed the character of the work: the difference between the actual unit cost to perform the itemized work as originally planned and the actual unit cost as changed, actual unit costs to be calculated on a "force account basis," i.e., applying state rates for equipment, materials and labor, and an allowable percentage of markup.[5]

It seems obvious that any attempt to calculate precise costs "as planned," when the work was not performed under those specifications, presents an enormous accounting problem and lies at the heart of the dispute. Atkinson generated several detailed cost estimates for purposes of the original claim submission, as well as for the arbitration proceeding, and constantly revised its methods of calculation to meet the various objections raised by the State.

DISCUSSION

I

The State's major contention on appeal is that the arbitrator erred in basing his award on the damages claimed by Atkinson which, it is argued, were not shown to have any relationship to any wrongful conduct of the State. We disagree.

---

[4]The State also errs, we think, in framing its appellate contentions in terms of arbitrator error rather than trial court error in affirming the arbitrator's decision, the subject matter of appeal.

[5]The contract proviso reads in pertinent part: "4-1.03C **Changes in Character of Work.**— If an ordered change in the plans or specifications materially changes the character of the work of a contract item from that on which the Contractor based his bid price, and if the change increases or decreases the actual unit cost of such changed item as compared to the actual or estimated actual unit cost of performing the work of said item in accordance with the plans and specifications originally applicable thereto, in the absence of an executed contract change order specifying the compensation payable, an adjustment in compensation therefor will be made in accordance with the following.

"The basis of such adjustment in compensation will be the difference between the actual unit cost to perform the work of said item or portion thereof involved in the change as originally planned and the actual unit cost of performing the work of said item or portion thereof involved in the change, as changed. Actual unit costs will be determined by the Engineer in the same manner as if the work were to be paid for on a force account basis as provided in Section 9-1.03; or such adjustment will be as agreed to by the Contractor and the Engineer. Any such adjustment will apply only to the portion of the work of said item actually changed in character. At the option of the Engineer, the work of said item or portion of item which is changed in character will be paid for by force account as provided in Section 9-1.03."

Testimony of Atkinson supervisors established that the changes ordered by the State were major, ongoing and seriously impacted the entire project in terms of efficient use of labor and machinery and planning ability. The entire project was delayed and disrupted due to the embankment changes. Even the State's own engineer admitted its responsibility. Thus, the State was responsible for a material change in the contract, for which Atkinson clearly had the bargained right to additional or adjusted compensation.

The accounting expert presented by Atkinson (Regan) testified that only the impact of certain change orders was considered in assessing which specific items were changed in character, and based his final increased cost estimates on those changes alone. Other losses or cost overruns directly attributable to Atkinson were not included in the amount of damages claimed.

The State criticizes Atkinson's "total cost" method of calculation (subtracting payments received from total cost) as disfavored. But this method of proving damages is properly permitted in cases such as this, where accurate assessments of costs "as planned" are difficult, if not impossible, to ascertain. (See, e.g., *Boyajian* v. *United States* (Ct. Cl. 1970) 423 F.2d 1231, 1244.) Nor has the State offered or suggested other reasonable means to measure the actual cost of a project before any change occurs. Even a State claims evaluator conceded that such calculations were difficult at best and that using prechange costs derived from bid estimates represented the only feasible method.

Numerous other discrepancies and disagreements detailed by the State were fully presented to the arbitrator as well as the trial court. In view of the cost-accounting complexities inherently involved in the assessment of damages as manifested by the record before us, we cannot say that the arbitrator acted unreasonably in rendering an award otherwise amply supported by sufficient evidence.

## II

As noted, the arbitrator concluded that only part of Atkinson's increased costs were due to changes in the work ordered by the State and accordingly awarded Atkinson 65 percent of its documented claim of damages. The State next contends that the percentage award of the total cost claim was arbitrary and without substantial evidentiary support.

The award of a specific percentage of overall damages, known colloquially as a "jury verdict," is largely a nascent procedure of the Court of Claims

used to determine a rough approximation of damages, especially in sizable construction cases when mathematical precision is impossible. (See, e.g., *Joseph Pickard's Sons Co.* v. *United States* (Ct. Cl. 1976) 532 F.2d 739, 742-743.) The use of jury verdicts is commonly applied when it is not possible to ascertain the precise amount of damages caused by a defendant's actions, as here demonstrated. (*Ibid.; Merritt, Chapman & Scott Corp.* v. *Guy F. Atkinson Co.* (9th Cir. 1961) 295 F.2d 14, 17; see also *Hensler* v. *City of Los Angeles* (1954) 124 Cal.App.2d 71 [268 P.2d 12].)

While conceding the legitimacy of the jury verdict method in determining an award, the State argues that at least some evidence, absent herein, is necessary to support such an approximation. But the record presented limns clear testimonial support of the increased costs Atkinson sustained on the project in the required adaptation of its construction efforts to the State's altered plans. Not only was the amount of work and equipment increased by the changes ordered, but the planned sequence and efficient use of labor and machinery were seriously affected. The entire operation was disrupted by the ongoing piecemeal changes ordered by the State. The suggestion that only a small amount of the total embankment fill was actually replaced by other material fails to recognize these massive "ripple effects."[6]

Atkinson made numerous comprehensive attempts to document the additional costs encountered, beginning with its first claim submitted to the State and concluding with several revisions presented during the course of the arbitration hearing. Additionally, Atkinson requested further time to attempt other computer-based accounting models if the arbitrator so desired. Still, it became virtually impossible to further sort out the details of specific costs increased on the various elements of the project indirectly affected by the ordered changes.

The difficulties confronting the factfinder and rationale justifying a reasonable approximation of damages in similar cases find cogent expression in a federal decision: ". . . in cases like this, if not in every complex case, it is humanly impossible to trace, find, and specify in detail and quantify in effect the numerous circumstances which cause or contribute to financial consequences. By such a process the determination of damages by court or jury could be bogged down in almost any case or rendered more inaccurate

---

[6]Similarly, the State's argument, that the total compensation awarded should be less than the total cost figure of some $969,000 as shown on the final 650 Report, fails to account for several other relevant factors, e.g., overhead expenses and profit margin.

than a considered judgment appraisal of the combined effect of all actionable elements duly considered by an informed fact finder after elimination of the influence of extraneous causes.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

". . . Juries frequently are called upon to make reasonable approximations within the perimeters of parties' claims, and it has not been thought fatal to their verdicts that the amount awarded did not precisely correspond with the claims or expert testimony, but represented an acceptance of the claims in part. The judgment of a court sitting without a jury . . . should be at least as perceptive and fair in weighing the various points and counterpoints with reference to the amount of damages. Notwithstanding the obligation of a court sitting without a jury to make findings of fact beyond a general verdict, it has been concluded here that detailed and minute findings weighing and allocating portions of claims going to make up the finding of the ultimate fact of damage would be a mechanical process which would be unrealistic and of no more validity, if as much, as finding by fair and reasonable approximation in the judgment of the court the total damages which the court is convinced the plaintiffs have suffered as a direct and proximate result of the unlawful acts of the defendant." (*Telex Corp.* v. *International Business Machines Corp.* (N.D.Okla. 1973) 367 F.Supp. 258, 308-309, 351, affd. in part; revd. and remanded on other grounds (10th Cir. 1975) 510 F.2d 894.)

Here, the arbitrator eliminated 35 percent from the highest claim estimate submitted by Atkinson for additional compensation in awarding 65 percent of the total claim as an approximation of the damages or compensation due to the changes ordered in the character of the work. Such an approximation was eminently reasonable given the inherent complexities of the cost-accounting problems posed by the indirect, yet widespread, effects of the State's ordered changes.

### III

Finally, in a related argument, the State contends the arbitrator failed to make findings of fact on certain issues underlying apportionment of fault, notably questions of waiver presented by the 1974 change orders and Atkinson's assumption of the risk of wet soil. The argument is untenable.

Nothing required the arbitrator to make such specific findings. The Executive Order merely provides for "written findings of fact, a summary of the evidence and reasons underlying the decision, and conclusions of law."

(Exec. Order No. B 50-78, par. 1.e.) The arbitrator's detailed 13-page statement of decision substantially complied with the contractual requirement.

Moreover, as we have previously observed, "the failure of an arbitrator to make a finding on even an express claim does not invalidate the award, so long as the award 'serves to settle the entire controversy' [citation]." (*Rodrigues* v. *Keller* (1980) 113 Cal.App.3d 838, 843 [170 Cal.Rptr. 349].)

Although the arbitrator's award did not specify the allocable percentage of the total damages claimed attributable to factors for which Atkinson was wholly or partly responsible (e.g., waiver of early costs by signed change orders, wet soil conditions and partial delay unrelated to the ordered changes), the final award implicitly reflected such disallowances and was sufficiently determinative of all items therein embraced. (*Id.,* 113 Cal.App.3d at p. 843.)

Judgment affirmed.

Elkington, J., and Holmdahl, J., concurred.