[No. F016981. Fifth Dist., Apr. 26, 1994.]

S. C. ANDERSON, INC., Plaintiff and Appellant, v.
BANK OF AMERICA NATIONAL TRUST AND SAVINGS
ASSOCIATION, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Statement of Facts and part I.

532

**COUNSEL**

Borton, Petrini & Conron, George F. Martin, Bob H. Joyce and Ralph Botros Kalfayan for Plaintiff and Appellant.

M. Chadwick Bulter, Jill M. Sturtevant, Frank G. Ker, Richard C. Herr, Ullar Vitsut, Winslow Christian and Michael J. Holloran for Defendant and Appellant.

## OPINION

**DIBIASO, J.**—The Bank of America N.T. & S.A. (Bank) appeals from the judgment entered on a jury verdict awarding $248,004.60 compensatory and $300,000 punitive damages against the Bank and in favor of S. C. Anderson, Inc. (Anderson). The Bank was the lender for the construction and development of two commercial building projects in Bakersfield. The borrowers and owners (developers) of the buildings, respectively, were limited partnerships called California Plaza Investors II (CP II) and Truxtun Associates II (TA II). Each of the buildings was identified by reference to the particular limited partnership which owned it.

Anderson was engaged by the developers to build tenant improvements in the two buildings. The developers ultimately defaulted on the loans and the Bank initiated proceedings to foreclose its security interests in the buildings. A portion of Anderson's charges for the construction of tenant improvements was not paid. Anderson brought an action against the Bank, claiming damages, based upon a cause of action for fraud arising out of certain communications between Anderson and the Bank during the course of the project.

The Bank contends the judgment must be reversed because the verdict is not supported by substantial evidence and the trial court erred in failing to grant its motions for directed verdict and judgment notwithstanding the verdict. Anderson cross-appeals, challenging the trial court's (1) grant of the Bank's motion for nonsuit with respect to Anderson's claim for lost profit damages, and (2) denial of Anderson's motion to reopen its case.

We will affirm in all respects. We publish the portion of this opinion which treats Anderson's cross-appeal only because it discusses the sufficiency of the evidence to prove damages, measured by lost prospective profits, allegedly suffered by a contractor as a result of a reduction in its "bonding capacity," a subject about which there is little case authority in this state or elsewhere.

### STATEMENT OF FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISCUSSION

### I.   *The Appeal*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 529.

## II. *The Cross-appeal*

### A. *Factual and Procedural Background*

In addition to general and punitive damages, Anderson claimed consequential damages, consisting of lost profits, based upon an alleged impairment of its bonding capacity. The California Supreme Court has recognized this ground of recovery in construction cases. (*Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 301 [85 Cal.Rptr. 444, 466 P.2d 996].)

According to Anderson, because it was not timely paid for its work on CP II and TA II, it was deprived of the opportunity to bid on, and therefore to be awarded the contracts for, several construction projects. The Bank moved *in limine* to exclude and limit Anderson's evidence relating to such damages. The trial court ruled, inter alia, that Anderson could present evidence regarding lost profits as to individual projects, provided it first established (1) it had actually prepared a bid for a specific construction project, and (2) it was precluded from submitting the bid because its bonding company had refused to issue a bid bond.

The evidence presented at trial relevant to this subject was as follows: A contractor must furnish a performance bond if it is awarded a public works construction project. A bid bond is a document issued by a bonding company which is attached by the contractor to its bid. The bond represents to the project owner that the contractor is bondable and, if the contractor is awarded the job, the surety company will issue a performance bond covering the work.

Steve Edwards of Frank B. Holland and Company was Anderson's bonding agent in 1986. Travelers Insurance Company was the surety that issued the bonds. In May 1986, Anderson's bonding capacity was $5 million for a single project, with a $10 million aggregate exposure.

A surety such as Travelers calculates a contractor's bonding capacity by assessing, among other things, the contractor's working capital. Working capital consists of current assets less allowed current liabilities. By mid-1986, Anderson's financial statements disclosed that the CP II and TA II receivables had not been paid for several months. This impacted Anderson's working capital and, in August 1986, resulted in a reduction in Anderson's bonding capacity from an aggregate exposure of $10 million to an aggregate exposure of $5 million.

In February 1987, Travelers approved a bid bond for submittal with Anderson's bid on an elementary school project for the Atascadero Unified

School District. Anderson was the low bidder for the job, but all bids were rejected and the project was scheduled for rebid in March 1987. Anderson prepared its rebid but Travelers refused to provide a corresponding bid bond because the project would take Anderson over its then existing $5 million bonding capacity. Without the bond, Anderson was unable to submit the rebid.

In 1986 and 1987, Anderson generally used a 5 to 8 percent profit and overhead figure in its bids. Anderson's rebid on the Atascadero school project was in the amount of $2,980,000, which included a 5 percent profit margin of $140,588. The successful low bid was $3,027,036.

Based on these facts, Anderson contended that, but for its inability to obtain a bid bond, it would have been the successful low bidder for the Atascadero project and would have realized a profit of $140,588 had it completed the work.

At the conclusion of Anderson's evidence, the Bank moved for nonsuit on the ground Anderson had failed to present facts sufficient to support an award of lost profits. Specifically, the Bank argued that because Anderson had not presented evidence of its past profitability, it failed to establish it would have earned the 5 percent profit margin projected in the rebid. In addition, the Bank argued that since the 5 percent figure represented gross profits, the jury had no basis upon which to calculate lost net profits, the proper measure of such damages.

Anderson's counsel responded to the motion by offering to produce additional evidence to show the company's profitability from 1983 through 1987. He proposed to recall Anderson's bookkeeper to testify to Anderson's "gross margins" during these years. Counsel defined "gross margins" as the differences between gross revenue and job costs. He explained that a contractor incurs certain fixed costs every year, and once these costs are covered by earlier projects, the profits earned on any later projects are net profits. Anderson's counsel represented that the bookkeeper had prepared a schedule showing Anderson's gross revenues, gross costs and gross margins for the five years at issue. However, counsel said he had concluded the trial court's ruling on the Bank's *in limine* motion precluded him from introducing the gross margin evidence. He therefore moved to reopen Anderson's case to present such evidence.

The Bank opposed the motion to reopen. It argued that nothing in the court's *in limine* ruling prevented Anderson from presenting the gross margin evidence and that the Bank would be prejudiced because its counsel had

"revealed a lot of [his] strategy" in his arguments and a potential witness had remained in the courtroom during argument on the nonsuit motion.

The trial court granted the nonsuit and denied Anderson's request to reopen its case.

### B. *Motion for Nonsuit*

■ A defendant is entitled to a nonsuit if the trial court determines, as a matter of law, that the evidence presented by the plaintiff is insufficient to permit a jury to find in his or her favor. In determining whether the plaintiff's evidence is sufficient, the court may not weigh it or consider the credibility of the witnesses. The evidence most favorable to the plaintiff, and all legitimate inferences that may be drawn from it, must be accepted as true, and conflicting evidence must be disregarded. (*Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948].) These principles do not, however, relieve a plaintiff of the burden of establishing the elements of his or her cause of action. The plaintiff must produce evidence which admits more than mere speculation or conjecture. (*Jones* v. *Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402 [209 Cal.Rptr. 456].) ■ On appeal, a ruling by the trial court granting a motion for nonsuit may be sustained only when the appellate court determines the defendant is entitled to judgment as a matter of law. (*Nally* v. *Grace Community Church, supra,* 47 Cal.3d at p. 291.)

■ Lost anticipated profits cannot be recovered if it is uncertain whether any profit would have been derived at all from the proposed undertaking. But lost prospective net profits may be recovered if the evidence shows, with reasonable certainty, both their occurrence and extent. (*Sanchez-Corea* v. *Bank of America* (1985) 38 Cal.3d 892, 907 [215 Cal.Rptr. 679, 701 P.2d 826].) It is enough to demonstrate a reasonable probability that profits would have been earned except for the defendant's conduct. (*Kerner* v. *Hughes Tool Co.* (1976) 56 Cal.App.3d 924, 937 [128 Cal.Rptr. 839]; accord, *Maggio, Inc.* v. *United Farm Workers* (1991) 227 Cal.App.3d 847, 869-876 [278 Cal.Rptr. 250].) The plaintiff has the burden to produce the best evidence available in the circumstances to attempt to establish a claim for loss of profits. (*Warner Constr. Corp.* v. *City of Los Angeles, supra,* 2 Cal.3d at p. 302; *Stott* v. *Johnston* (1951) 36 Cal.2d 864, 876 [229 P.2d 348, 28 A.L.R.2d 580].)

■ In this case, while there was testimony that Anderson was an excellent company, as well as argument regarding its profitability, Anderson offered no evidence which would have enabled the jury to conclude it was reasonably probable the company would in fact have earned a profit of

$140,588 had it been awarded the Atascadero project.[9] (*See Warner Constr. Corp.* v. *City of Los Angeles, supra,* 2 Cal.3d at p. 301.) For example, Anderson did not offer any evidence that its bid was accurate or reasonable or that Anderson could have done the work required under the plans and specifications applicable to the Atascadero project for an amount equal to or less than the portion of Anderson's bid which represented the projected costs of the work. (See *Servidone Const. Corp.* v. *U.S.* (Fed.Cir. 1991) 931 F.2d 860, 861-862.)[10] The fact that Anderson bid a certain amount for the project does not necessarily mean it could have performed the work for the amount of the total costs included in its bid. Many factors might have operated to reduce or eliminate Anderson's anticipated 5 percent profit had it been awarded the job. It is entirely possible the bid contained errors which resulted in an inaccurate statement, on the low side, of the cost of the work as estimated by Anderson in preparing to bid. It is also possible the bid was based on overly optimistic takeoffs or estimates, or was for some other reason an unreasonable assessment of the costs likely to be incurred in the actual construction. Anderson's evidence addressed none of these subjects.

In addition, performance inefficiencies during the course of a job may inflate a contractor's projected costs. (*Servidone Const. Corp.* v. *U.S., supra,* 931 F.2d at p. 862.) Such inefficiencies may arise from a variety of causes, including the inexperience of the contractor in performing work of the type required by a particular job. The evidence disclosed during the course of the trial provided little information on this subject. There is nothing in the record which explains the nature or scope of the Atascadero project. In addition, Anderson's work with respect to CP II and TA II consisted only of that construction necessary to adapt the interior spaces of the buildings for use by tenants; Anderson did not build the original structures. The total cost of the tenant improvements was in the neighborhood of $1.8 million; the rebids for the Atascadero school project were in the $3 million range. On the other hand, Anderson's single project bonding capacity, at the time of the first Atascadero bid, was $5 million.

We recognize Anderson was not required to establish the amount of its damages with absolute precision, and was only obliged to demonstrate its

---

[9]Anderson does not challenge on appeal the trial court's ruling which restricted Anderson's proof of claimed lost profits to those attributable to specific potential bids. Our evaluation of the sufficiency of Anderson's evidence is in this context alone, and we take no position on the subject of whether damages for alleged diminished bonding capacity must in all cases be established only by reference to particular, identified lost bidding opportunities.

[10]*Servidone* did not involve lost profit damages resulting from an alleged impairment of bonding capacity. Instead, it involved a claim, based on the "total cost" (see fn. 11, *post*) method of proving damages, for increased costs incurred in the performance of a construction contract. (*Servidone Const. Corp.* v. *U. S., supra,* 931 F.2d at p. 861.) Notwithstanding this lack of similarity to the instant case, we believe the rationale underlying the decision in *Servidone,* insofar as it pertains to the significance of the bid and other factors relating to the costs of the work, to be equally applicable here.

loss with reasonable certainty. (*GHK Associates* v. *Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 873 [274 Cal.Rptr. 168].) However, the law also compels the plaintiff to present "the best evidence . . . [of damages] of which the nature of the case is capable." (*Stott* v. *Johnston, supra,* 36 Cal.2d at p. 876.) Here there was no showing by Anderson that it was impossible or impracticable to produce evidence relating to the accuracy of its bid, its ability to competently and efficiently perform the Atascadero project, or its likely net profit. (See *Warner Constr. Corp.* v. *City of Los Angeles, supra,* 2 Cal.3d at p. 302; see also *Servidone Const. Corp.* v. *U.S., supra,* 931 F.2d at p. 861 [requirements for establishing damages under the "total cost"[11] method include a showing it is impracticable to prove actual losses directly].)

The trial court did not err in granting the motion for nonsuit.

## C. *Motion to Reopen*

■ After a motion for nonsuit is made in a jury trial, it is the trial court's duty, if so requested, to permit the plaintiff to reopen its case and introduce further evidence, since one of the objectives served by such a motion is to point out the oversights and defects in the plaintiff's proof so he or she may supply, if possible, the specified deficiencies. It is error to refuse this privilege and, after such refusal, to grant a motion for nonsuit. (*Huang* v. *Garner* (1984) 157 Cal.App.3d 404, 416 [203 Cal.Rptr. 800], and see cases cited at 7 Witkin, Cal. Procedure, (3d ed. 1985) Trial, § 420, pp. 420-421.)

---

[11]Traditionally, three approaches have been utilized to attempt to prove damages resulting from extra or additional work performed by a contractor: (1) the "actual cost" method, where the actual costs of the work are proved by reference to separate records kept for the specific purpose of tracking such damages (see *New Pueblo Constructors, Inc.* v. *State* (1985) 144 Ariz. 95 [696 P.2d 185, 194]); (2) the "total cost" method, where the contractor subtracts the estimated cost or bid of the entire project from the final actual cost of the entire project in order to arrive at a damage figure (see *New Pueblo Constructors, Inc.* v. *State, supra,* 696 P.2d at p. 194; *Servidone Constr. Corp.* v. *U.S., supra,* 931 F.2d at pp. 861-862; and *Huber, Hunt & Nichols, Inc.* v. *Moore* (1977) 67 Cal.App.3d 278, 307-309 [136 Cal.Rptr. 603]); and (3) the "jury verdict" method where the jury is presented with whatever actual date and records exist, along with relevant estimates and opinions by experts and comparisons to similar projects, and invited to " 'guesstimate' " (*Dawco Const., Inc.* v. *U.S.* (Fed.Cir. 1991) 930 F.2d 872, 881) the amount of the contractor's damages (see *New Pueblo Constructors, Inc.* v. *State, supra,* 696 P.2d at p. 194; *Dawco Const., Inc.* v. *U.S., supra,* 930 F.2d at p. 881; and *State of California* ex rel. *Dept. of Transportation* v. *Guy F. Atkinson Co.* (1986) 187 Cal.App.3d 25, 32-33 [231 Cal.Rptr. 382]). This means of proving damages may be resorted to only if the plaintiff "can demonstrate a justifiable inability to substantiate the amount of [its] resultant injury by direct and specific proof." (*Joseph Pickard's Sons Co.* v. *United States* (Fed.Cir. 1976) 532 F.2d 739, 742; see also *Dawco Const., Inc.* v. *U.S., supra,* 930 F.2d at p. 881; and *State of California* ex rel. *Dept. of Transportation* v. *Guy F. Atkinson Co., supra,* 187 Cal.App.3d at p. 33.)

■ On the other hand, a trial court's denial of a motion to reopen following the grant of a nonsuit will not be overturned when the additional evidence sought to be produced by the plaintiff is either irrelevant to the issues involved in the action (no error) or would not be sufficient to render defendants liable as a matter of law (no prejudice). (*Huang* v. *Garner, supra,* 157 Cal.App.3d at p. 418; *Greene* v. *Atchison, T. & S. F. Ry. Co.* (1953) 120 Cal.App.2d 135, 144 [260 P.2d 834, 40 A.L.R.2d 873]; 7 Witkin, Cal. Procedure, Trial, *supra,* § 420, at p. 421.) ■ This latter principle applies here.

Anderson moved to reopen its case for the limited purpose of offering evidence to support its claim that it would have realized a net profit of $140,588 on the Atascadero school project. In order to overcome the purported omission described by the Bank in its nonsuit motion, Anderson proposed to have its bookkeeper testify about the company's "gross margins" for 1983 through 1987, in order to support the reliability of the 5 percent profit projection figured into Anderson's bid and also to demonstrate that the "gross margin" on the Atascadero school project was equivalent to a net profit for the company.

On this record, it is unclear whether the information and testimony to be supplied by the bookkeeper would have cured the deficiencies in Anderson's proof by establishing, directly or inferentially,[12] that Anderson's reasonably anticipated costs of performing the job would have been no greater than 95 percent of the amount of Anderson's bid.[13] The schedule said to have been prepared by the bookkeeper was not included in the record on appeal. Anderson's oral offer of proof did not explain, for example, whether the revenues, costs and margins to be presented through the bookkeeper were separately calculated and listed for each job performed by the company during each of the specified years or instead were nothing more than cumulative totals segregated only by years.

We cannot say that evidence about Anderson's experience or business history, and its revenues, costs, and margins for some reasonable time frame,

---

[12]Whether the law will allow the trier of fact to draw an inference depends upon whether the court is persuaded that the proposed conclusion is a reasonable, logical, and nonspeculative deduction from the facts proved. (Evid. Code, § 600; *Dimond* v. *Caterpillar Tractor Co.* (1976) 65 Cal.App.3d 173 [134 Cal.Rptr. 895].)

[13]The use of expert testimony to establish these elements, while perhaps not necessary, certainly was not prohibited. (See *Warner Constr. Corp.* v. *City of Los Angeles, supra,* 2 Cal.3d at p. 302 [the plaintiff's case did not include any "expert analysis or breakdown of the damages"]; *Kerner* v. *Hughes Tool Co., supra,* 56 Cal.App.3d at p. 937 [expert testimony concerning the plaintiff's estimated costs of performance].) In addition, if available, the actual costs incurred by the contractor who constructed the Atascadero project, as well as other information relating to the successful bid and the project as built, might have been relevant and useful.

would have been insufficient as a matter of law to support favorable inferences concerning the accuracy and reasonableness of Anderson's Atascadero bid, its ability to efficiently perform the job in accord with its bid, or its expected net profits. (See *Warner Constr. Corp.* v. *City of Los Angeles, supra*, 2 Cal.3d at p. 301-302; *Laas* v. *Montana State Highway Commission* (1971) 157 Mont. 121 [483 P.2d 699, 703].) On the other hand, we can say with considerable confidence that a collection of "year-end" summaries of one or more categories of general corporate financial data would likely have been inadequate to establish the specific lost profits claimed by Anderson. In the absence of a more precise offer of proof, however, we are in no position to arrive at conclusions about these subjects favorable to Anderson, who must bear the consequences of all defects and ambiguities in its offer. (*McCleery* v. *City of Bakersfield* (1985) 170 Cal.App.3d 1059, 1075 [216 Cal.Rptr. 852].)

Thus, Anderson failed to demonstrate that the evidence it intended to introduce, if its motion were granted, would have been sufficient, when added to the other evidence adduced by Anderson during its case-in-chief, to authorize the jury to find Anderson lost profits by reason of its inability to rebid the Atascadero project. (See *Huang* v. *Garner, supra*, 157 Cal.App.3d at p. 418.) ■ Although the trial court's denial of Anderson's motion to reopen was not based upon this ground, we are required to affirm where, as here, the result arrived at by the trial court is correct on any theory of the law relevant to the case. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117]; *El Centro Grain Co.* v. *Bank of Italy, etc.* (1932) 123 Cal.App. 564, 567 [11 P.2d 650].)

## DISPOSITION

The judgment is affirmed. The Bank shall bear Anderson's costs with respect to the Bank's appeal. Anderson shall bear the Bank's costs with respect to Anderson's cross-appeal.

Stone (W. A.), Acting P. J., concurred. Thaxter, J., concurred in part II and in the result only in part I.