Filed 6/24/13  Mt. Whitney Farms v. Sandstone Marketing CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MT. WHITNEY FARMS, LLC et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>SANDSTONE MARKETING, INC.,<br><br>Defendant and Appellant. | F062505<br><br>(Super. Ct. No. 08CECG03286)<br><br><br>**OPINION** |
| SANDSTONE MARKETING, INC.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MT. WHITNEY FARMS, LLC et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. 08CECG03276) |

APPEAL from a judgment of the Superior Court of Fresno County.  M. Bruce Smith, Judge.

Felger & Associates and Warren P. Felger for Plaintiffs, Defendants and Appellants Mt. Whitney Farms, LLC and Felger Farms.

Perkins, Mann & Everett, Douglas V. Thornton, Robert W. Branch, and Craig A. Tristao for Plaintiff, Defendant and Appellant Sandstone Marketing, Inc.

-ooOoo-

This case involves an appeal and a protective cross-appeal. The appeal is from a judgment entered on a jury verdict awarding $230,685 to Sandstone Marketing, Inc., and awarding nothing to Mt. Whitney Farms, LLC, and Felger Farms. (In accordance with the parties' practice in their briefs, we will refer to Mt. Whitney Farms, LLC, and Felger Farms, collectively, as "the growers" and to Sandstone Marketing, Inc., as "Sandstone.") The growers contend the jury's verdict was contrary to the law, precluded by the growers' contract with Sandstone, and unsupported by sufficient evidence. In a protective cross-appeal, Sandstone contends an erroneous jury instruction on its breach of contract cause of action requires a new trial on that cause of action in the event that the verdict on another cause of action is reversed in accordance with the growers' theory on appeal. We conclude there is no merit to the growers' contentions on appeal and affirm the judgment. As a result, we do not reach the issue raised by Sandstone.

## FACTS AND PROCEDURAL HISTORY

After several months of negotiations and consultations between the growers and Sandstone, the parties entered into a contract for the growers to plant and grow various kinds of melons from seed to be provided by Sandstone. The contract required the growers to act in "a timely and farmerlike manner" in producing the crop, and to "perform [their] responsibilities and obligations under [the] Agreement in accordance with good farming practices as applied generally in the vicinity of the Property." The growers were required to irrigate and apply chemicals to the crop, employing "clean, safe and sound farming practices." They were required to consult with Sandstone at least weekly regarding "farming practices and future plans for irrigation and chemical

2.

applications." Sandstone was required to harvest, pack, and market the melons; it set the planting schedule in accordance with its anticipation of market conditions at the projected time of harvest. Within 30 days after completion of the harvest, Sandstone was required to pay the growers the greater of a price per carton of harvested melons or $750 per acre under cultivation. The parties contemplated, based on the growers' past production figures, a harvest of over 100,000 boxes of melons, but the contract did not specify any required yields.

In the time during which the contract was being negotiated, the growers disked and tilled the fields, and applied pre-planting irrigation and weed-control chemicals, all in anticipation of reaching an agreement with Sandstone. The final contract was executed a few days before planting was scheduled to begin.

The growers bought a used planter in anticipation of entering into the contract. Once planting started, they discovered it needed repairs and, during two separate periods waiting for parts, the planting was delayed. When the plants emerged, it was apparent that germination had been poor. The parties estimated that 40 to 50 percent of the seeds germinated, as opposed to 70 or 75 percent germination for a normal crop. (Sandstone contended at trial the delay in planting had resulted in overly dry soil conditions; the growers argued the seeds had been damaged by heat while under Sandstone's control.) Thereafter, conditions in the fields deteriorated. (Sandstone contended this was because the growers failed to apply herbicides and pesticides in a timely manner and failed to take adequate measures to protect portions of the fields from rabbits; the growers contended weeds and rabbits were minor problems and that insect infestations occurred unexpectedly and were beyond their control.) Sandstone began harvesting the melons on September 10, 2008, but stopped harvesting after packing 5,882 boxes and declared a breach of the contract on September 16, 2008, because, it said, failure to properly farm the fields had resulted in poor yields. When it terminated the contract, Sandstone offered to harvest the remaining marketable melons in the field and to pay "[o]utside of the

3.

contract" the same price per box for the melons that had been established in the contract, without the minimum "per acre" price. The growers rejected this offer.

On September 19, 2008, Sandstone filed suit against the growers for breach of contract. On September 22, 2008, the growers filed their separate action for breach of contract. On the stipulation of the parties, the trial court ordered consolidation of the two cases under the case number of the growers' action. The matter went to trial on the growers' second amended complaint and Sandstone's third amended complaint. The growers' second amended complaint asserted causes of action for breach of contract, conversion, trespass, and fraud. Sandstone's third amended complaint asserted causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, fraud, and reformation.

After the close of evidence, the jury was instructed and given a special verdict form. Among other questions, the special verdict form asked whether the growers did "all of the significant things that the melon contract required them to do." The jury answered, "No." In other questions, the jury determined that Sandstone did not knowingly or recklessly make a "false representation of an important fact" to the growers, and did not make a promise that was important to the transaction without the intent to perform when it made the promise. The net result of these determinations was that the growers were denied recovery on their causes of action. The jury also answered "No" to the question, "Did Sandstone Marketing do all of the significant things that the melon contract required it to do?" In accordance with the special verdict form, this answer resulted in a judgment against Sandstone on its breach of contract cause of action. However, the jury answered "Yes" to the question, "Did [the growers] unfairly interfere with Sandstone Marketing's right to receive the benefits of the melon contract?" The jury concluded Sandstone's damages from this interference were $230,685. The jury also found against Sandstone on its fraud cause of action. Judgment was entered accordingly, and the growers' motion for judgment notwithstanding the verdict was denied.

4.

## DISCUSSION

The growers first contend that, as a matter of law, there cannot be a breach of the implied covenant of good faith and fair dealing unless there is also a separate breach of the underlying contract. They contend that because the jury ruled against Sandstone on its breach of contract cause of action, the award of damages on the bad faith cause of action constitutes a necessarily inconsistent verdict. The growers' contention is wrong both on the law and in its factual premise that the jury found the growers had not breached the contract.

In asserting the legal requirement of an underlying breach of contract in addition to the breach of the implied covenant of good faith and fair dealing, the growers rely primarily upon *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566. That case, however, supports a contrary conclusion. It has long been established that the implied covenant of good faith and fair dealing exists only when there is an underlying contract (see *id.* at p. 576; see also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 800, p. 894), but it is not the law that a separate actionable breach of contract is a necessary precondition for recovery for breach of the implied covenant of good faith and fair dealing (*Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 578; see also *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373). Instead, even where conditions exist that would prevent a party from recovering for breach of contract, "the nonperformance by one party of its contractual duties cannot excuse a breach of the duty of good faith and fair dealing by the other party while the contract between them is in effect and not rescinded." (*Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 578.) In *Gruenberg*, the plaintiff refused to appear for examination under oath concerning his fire loss; arson charges were pending against him at the time. (*Id*. at pp. 570-571.) Based on policy language that permitted the insurance company to deny coverage for failure of the insured to cooperate in the investigation, the company denied coverage. (*Ibid*. & fn. 2.) The plaintiff sued for "outrageous conduct and bad

5.

faith" (*id*. at p. 572), which the Supreme Court characterized as equivalent to a cause of action for breach of the implied covenant of good faith and fair dealing. (*Id*. at p. 575.) The court held that the failure of the plaintiff to perform all his duties under the insurance contract did not prevent his action against the defendant for failing in its duty of good faith and fair dealing under the contract. (*Id*. at p. 577; see also *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 402, 405.)

The additional cases cited as authority by the growers that there must be a breach of both an express contractual obligation *and* a breach of the implied covenant all address the issue of whether tort damages, in addition to contract damages, are available to a plaintiff who alleges breach of the implied covenant of good faith and fair dealing. (See, e.g., *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395; *Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 57.) Those cases are inapplicable in the circumstance of this case.

In addition, the facts do not support the growers' contention that the jury found there had been no breach of contract by the growers. In the verdict form regarding Sandstone's breach of contract action against the growers, the jury found Sandstone had not done all "of the significant things that the melon contract required it to do."[1] The jury was instructed that, if that was their finding, they were to skip the remainder of the questions on that cause of action (which included the question of whether the growers failed to perform under the contract) and proceed to the questions on Sandstone's cause of action against the growers for breach of the implied covenant of good faith and fair dealing. The jury did find, on the growers' cause of action for breach of contract, that the growers did not do "all of the significant things that the melon contract required them to

---

[1] Sandstone's protective cross-appeal contends the instructions prejudiced it because the instructions on the breach of contract cause of action misstated the law regarding excuse of performance. Even if that is so, however, the error did not prejudice *the growers*, and they do not contend that the instructions did so.

6.

do." On this record, it cannot be said that the jury found there had been no breach of contract by the growers.

The growers next contend that because the contract did not require them to deliver a definite quantity of melons, Sandstone was not entitled to recover for lost profits. This argument confuses the obligations of the parties under the contract with the measure of damages for breach of those obligations. The growers assert that "there is nothing in the melon contract itself that gives even a hint that the contracting parties agreed to deliver a certain quantity of melons to Sandstone." That is correct, as far as it goes. However, the contract clearly requires the growers to use good farming practices in the production of the crop, and it is their extensive failure to do so that is the basis for Sandstone's claim of liability for breach of the implied covenant of good faith and fair dealing. Imposing liability for the failure to perform as required by the contract does not in any way constitute, as the growers phrase it, "rewrit[ing] the parties' contract to add a provision for the delivery of a certain quantum of melons."

Nevertheless, the purpose of damages for breach of the implied covenant, or any other breach of contract, in the absence of some different measure stated in the contract, is to place the non-breaching party in as good a position as it would have been if the other party had not breached the contract. Such damages in a contract setting are limited, as the jury here was instructed, to compensation for harm "that when the contract was made, both parties knew or could reasonably have foreseen … was likely to occur in the ordinary course of events as [a] result of the breach of the contract." (See *Sun-Maid Raisin Growers v. Victor Packing Co.* (1983) 146 Cal.App.3d 787, 791.) It is in the context of establishing the reasonably foreseeable harm, not in the context of establishing the underlying breach of the implied covenant, that evidence of the parties' reasonable and shared expectations for the crop become relevant. Thus, the representation by one of the growers, Forrest Felger, that his past crops for other packers had produced a certain volume of melons per acre, the undisputed evidence that he had relayed that history to

7.

Sandstone's agent, and the agent's testimony that he had used that estimate as the basis for entering into contracts for the resale of melons he expected to harvest from the growers' fields, constituted a basis upon which the jury could quantify the harm done by the growers' failure to use good farming practices to produce a crop in keeping with the parties' reasonable expectations. When considered in light of other evidence of costs of production and sales price for the melons, the shared production estimates of the parties formed a sufficient basis for an award of lost profits resulting from the growers' failure to use good farming practices.

The growers contend the disclaimer of warranties contained in the contract constituted an agreement by the parties that Sandstone could not recover consequential damages under any circumstances. The disclaimer paragraph states: "The Melons are being sold by [the growers] 'AS IS, WITH ALL FAULTS, WITHOUT ANY REPRESENTATION AND WARRANTIES.'" Under the growers' proposed interpretation of the contract, the disclaimer of warranties clause would wholly negate the growers' duty, expressed earlier in the contract, to use good farming practices in the production of the crop, as well as their specifically enumerated duties to irrigate the crop, to apply needed chemicals and fertilizers, and to maintain sanitary growing conditions to "avoid any contamination of the Melons." In the context of the contract, the disclaimer of warranties is clearly intended to protect the growers from issues concerning the price the melons might bring upon sale in the marketplace by Sandstone, and to protect the growers from claims concerning the quality of the melons *if* the growers used good farming practices and otherwise discharged their duties under the contract. Any other interpretation would be unreasonable and would render all of the growers' duties and undertakings in the contract illusory. (Civ. Code, § 1643.)

Finally, the growers contend the evidence was insufficient to permit the jury to award lost profits to Sandstone. Once again, the growers' contentions are based upon their confusion of two distinct concepts, in this case, the anticipated profits from a lost

8.

business opportunity and the loss of profits from a business transaction that had already taken place. In the former category, the risk is that sometimes businesses make a profit and sometimes they do not; therefore the courts require a reasonably concrete basis for speculation that a business would have made a profit if it had undertaken performance on a contract. In *S. C. Anderson, Inc. v. Bank of America* (1994) 24 Cal.App.4th 529, upon which the growers rely, a contractor who claimed it had not been timely paid by the bank for one project asserted damages for its lost profit on subsequent projects that it had been unable to bid on because the bank's action had impaired the contractor's capital. (*Id*. at pp. 534-535.) The Court of Appeal observed that "[l]ost anticipated profits cannot be recovered if it is uncertain whether any profit would have been derived at all from the proposed undertaking." (*Id*. at p. 536.) The court concluded the contractor had failed to demonstrate lost anticipated profits because it did not introduce proof of its costs and efficiency for the lost projects, nor the likely profit attributable to the projects. (*Id*. at p. 538.) Instead, the contractor only presented evidence that it generally included a 5 to 8 percent profit into the price when it submitted bids for projects. (*Id*. at p. 535.) Under these circumstances, the speculative evidence was not the best available evidence, and an award of damages for lost anticipated profits was not permissible. (*Id*. at p. 538.) In the other cases cited by the growers: the plaintiff sought damages for lost anticipated profits because the truck sold by the defendant was not operable (*Berge v. International Harvester Co.* (1983) 142 Cal.App.3d 152, 157, 161); the plaintiffs refused to enter into a 10-year lease of farm land, thereby depriving the defendant of use of the land (*Nelson v. Reisner* (1958) 51 Cal.2d 161, 162-163, 167-168, 171); and the defendant cancelled a service station lease, depriving the plaintiff of profit on future sales of gasoline (*Kuffel v. Seaside Oil Co.* (1970) 11 Cal.App.3d 354, 358, 366). In all those cases, the complaintants sought damages based on events that did not happen, and the question was whether they sufficiently proved lost profits that were inherently speculative.

9.

In the present case, by contrast, Sandstone sought its lost profits only for the year of the melon contract. It introduced evidence that it had entered into contracts with buyers based on its anticipated harvest of melons under its contract with the growers, thereby establishing the gross sales for that contract year. Sandstone introduced evidence of what it would have paid to the growers and others under the contract as the gross cost of the melons if the growers had performed under the contract. And it introduced evidence that in some cases it bought other melons on the open market to fulfill the contracts it had entered into in anticipation of receiving melons from the growers. This was sufficient evidence from which to calculate Sandstone's lost profit for the year in question. (See *Sun-Maid Raisin Growers v. Victor Packing Co., supra,* 146 Cal.App.3d at pp. 790-791.) Sandstone did not seek profits based on speculation about future years, nor loss of profits based, for example, on damage to its standing in the industry because it was unable to deliver melons after the growers' default. Such claims as these, which Sandstone did not make, would present a different issue on which *S. C. Anderson, Inc. v. Bank of America, supra,* 24 Cal.App.4th 529 and the other cited cases might provide guidance. As the case was tried, however, the evidence of lost profit for the single year in question was fully adequate to sustain the jury's award of damages. (See, e.g., *Sun-Maid Raisin Growers v. Victor Packing Co., supra,* 146 Cal.App.3d at pp. 791-792; *Tomlinson v. Wander Seed & Bulb Co.* (1960) 177 Cal.App.2d 462, 473-474.)

## DISPOSITION

The judgment is affirmed.  Sandstone Marketing, Inc., is awarded costs on appeal.

_____
DETJEN, J.

WE CONCUR:


_____
WISEMAN, Acting P.J.


_____
LEVY, J.